No. 38,192

ELIZABETH L. FRY, ANNA M. FOWLER, RUTH E. FRY and EDNA LUCILE FRY, *Appellants*, v. JOHN McCORMICK, *Appellee*.

(228 P. 2d 727)

Opinion filed March 10, 1951.

*D. A. Hindman*, of Stockton, was on the briefs for the appellants.

*Stanley Krysl*, of Stockton, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to set aside an oil and gas lease executed and delivered to the defendant by four plaintiffs, as trustees.

The court denied the relief sought and quieted the title to the lease in the defendant. The plaintiffs appeal.

The action was tried by the court on an agreed statement of facts which reads:

"1. That plaintiffs were on the 18th day of September, 1945, at the time the 'Mure*ty* Trust', hereinafter referred to, was executed, the owners of the following described property, to-wit: [Description of one half a quarter section] and are now, and have been ever since, the owners thereof, subject only to whatever *a*ffect said 'Murtey Trust' has upon said ownership, and the rights of said parties.

"2. That on the 16th day of November, 1949, Anna M. Fowler, Elizabeth L. Fry, Ruth E. Fry and Edna Lucile Fry, as Trustees of the 'Murtey Trust', for a valuable consideration, executed and delivered to Defendant, an Oil, Gas and Mineral Lease, upon said property, the same being recorded in Book 30,

page 145, of the Oil and Gas Records of Rooks County, Kansas, and a true and correct copy of the same is attached to Plaintiffs' Petition, as Exhibit 'A'. That Defendant has been ever since, and now is, the owner and holder of said lease.

"3. That Plaintiffs did not intend to execute said lease as individuals which Defendant well knew, and was accepted by Defendant as being executed by said parties in their capacity as Trustees, only.

"4. That said Trustees executed said lease by virtue of the purported authority granted them in a purported Trust Agreement, known as the 'Murtey Trust', dated the 18th day of September, 1945, recorded in Book '0', pages 137-138 of the records of Rooks County, Kansas, a true and correct copy of said Trust Agreement is attached to Plaintiffs' Petition, marked Exhibit 'B', and is incorporated in this Statement of Facts, by reference.

"5. The Oil, Gas and Mineral Lease, a copy of which is attached to Plaintiffs' Petition, as Exhibit 'A', is incorporated in this statement of facts by reference.

"6. The purported Trust Agreement, known as the 'Murtey Trust', was executed by all of the Plaintiffs, together with the spouse of the only one of them that was married on the 18th day of September, 1945, as shown by said instrument, that no revocation of said agreement has been made, or attempted to be made by the parties thereto, or any of them, or any Court, or otherwise and the same has been ever since the execution thereof, and now is, in full force and effect, according to the terms thereof."

The trust instrument is quite lengthy and we shall set forth only such provisions thereof as are necessary in view of appellants' contentions. Among the trust provisions are the following:

"WHEREAS, said parties desire to create a Trust to perpetuate the name of Murety, to insure an income for them during their respective lifetimes and for the parties hereinafter named, particularly the direct descendants of said parties on the Murtey side for the term herein after specified.

"Now, THEREFORE, said Anna M. Fowler, Elizabeth L. Fry, Ruth E. Fry and Edna Lucile Fry hereinafter called Trustors, hereby convey and transfer said property to Anna M. Fowler, Elizabeth L. Fry, Ruth E. Fry and Edna Lucile Fry, and their successors, as Trustee, until the death of the last survivor of said persons, and Kenneth Dale Fowler, Wilma Fowler, Ralph Clifton Fowler and Stanley Fowler, children of Anna M. Fowler now living and Twenty-one (21) years thereafter.

"During the term of said Trust, said property shall be managed, controlled, and supervised by said Trustees and their successors. Said Trustees shall have full authority to execute oil, gas, and mineral leases upon said property, upon such terms and conditions as they desire, collect and receive the bonuses, delay rentals, royalties, and other benefits therefrom, but they shall not have power to sell, mortgage, pledge, or hypothicate said property, or any part thereof."

Appellants' first contention is the trust agreement is invalid because it appoints the owners of the property as the trustees thereof. They insist a sole beneficiary of a trust cannot be the sole trustee

thereof and conversely that a sole trustee of a trust cannot be the sole beneficiary thereof, citing Restatement, Trusts, § 99 (5) and § 115 (5). That statement need not be labored. It is sound. It is based on the established principle that if the rule were otherwise the legal title and the entire beneficial interest would be merged in the same person who could freely dispose of the property as any other owner. In other words there would be no separation of the legal and beneficial interest and hence no trust relationship.

That, however, is not true under the terms of the instant instrument. Here there are four trustees. True they are also beneficiaries but each is a trustee not only for his own beneficial interest but also for the beneficial interest of each of the others. Here each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. No one of the trustees without the concurrence of the others could properly transfer an undivided legal interest in the property free of the trust. The same sections of the text from Restatement on Trusts relied on by appellants state the rule applicable to the present case. Section 99 (4) reads:

"If there are several beneficiaries of a trust, the beneficiaries may be the trustees."

In § 115 (4) the principle is stated conversely as follows:

"If there are several trustees of a trust, the trustees may be the beneficiaries of the trust."

That is also the rule in this state. In *Johnson v. Muller,* 149 Kan. 128, 134, 86 P. 2d 569, we held:

"The rule that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest, and that a trust cannot exist where the legal and beneficial interests are in the same person, does not apply to a situation where several beneficiaries of a trust, whose interests therein are not common to each other, are also the trustees." (Syl. ¶ 5.)

In the Johnson case the trust was created by a will. Here it is an agreement *inter vivos.* We know of no reason for holding a different rule applies in this case and none is suggested.

Furthermore it will be observed the instrument discloses on its face the trust included other beneficiaries than the trustees. Four named children of Anna M. Fowler were made beneficiaries. The trust instrument also contains a specific provision for succession of trustees. In *Johnson v. Muller,* supra, we said:

"We are of opinion that under the will the interests of the beneficiaries are not common to each other, that each trustee is to look after the interest of all beneficiaries, that each beneficiary is interested in what all of the trustees may do in the management and control of his estate, and there being specific provision for succession of trustees, that it may not be said that any beneficiary is trustee for himself alone." (p. 135.)

Although there is some contrariety of view on the subject it appears the rule adhered to in this jurisdiction is the sounder doctrine and is approved by at least a slight majority of the courts and text writers. See *Blades v. R. R.*, 224 N. Car. 32, 29 S. E. 2d 148, 151 A. L. R. 1278, and anno. at 151 A. L. R. 1287, 1289, 1296, et seq.

Appellants next argue the trust instrument should be held void as constituting an unreasonable restraint upon alienation of property and as being contrary to public policy. No authorities are cited supporting the view that persons may not among themselves agree to restrict alienation of their own property under a trust agreement made for the benefit of themselves and their children so long as it does not contravene the rule against perpetuities. In *Grossenbacher v. Spring*, 108 Kan. 397, 195 Pac. 884, it was held:

"It does not offend any rule of law or public policy of Kansas for a testator to so dispose of his estate as to prevent its dissipation for a reasonable length of time, provided his estate will eventually vest in allodial fee upon some taker within the period countenanced by the rule against perpetuities." (Syl. ¶ 4.)

It also may be well to state the instant case involves no claim of creditors of any trustee or any beneficiary. The sole issue is the validity of the trust as between the parties who created it. They are endeavoring to set aside the lease they executed pursuant to the authority of their own creation, the trust.

Appellants also argue the trust should be held void because it does not contain a penalty for its breach of forfeiture by the trustees. No authorities are cited requiring such a provision in a trust of this character. Persons dealing with trustees ordinarily are required to know their powers. If a trustee exceeds his powers his acts are a nullity and absent other considerations are ordinarily without force or effect. On the other hand if a trustee fails to perform his duties redress to compel performance may be had through the courts. No penalty provision for breach of duty therefore appears to be necessary in a trust instrument of this character in order to render the trust valid.

Appellants further assert the oil and gas lease was void for the

reason the previously quoted portion of the trust did not grant the trustees the right to execute an oil and gas lease on some portion of the land but granted only the right to execute leases on all of it. The contention is unsound. If they had authority, and they did, to execute a lease, or leases, on all the lands covered by the trust they obviously, in the absence of an express provision to the contrary, had authority to execute a lease on a part thereof. The trust embraced 880 acres of land lying in five separate sections and we are told in four noncontiguous tracts. The trust did not make it mandatory to lease all or none of the land. Moreover the trust granted the right to execute not one lease but "leases." Furthermore the trust instrument contains no provision leases on the various tracts had to be executed at the same time. The fact the lease covered only one eighty acre tract of the land did not render the lease invalid.

The judgment is affirmed.